As stated in the above analysis, we do not find any genuine issue of material fact regarding MMAStop's alleged unjust enrichment. Therefore, we conclude the district court was correct in entering summary judgment in favor of MMAStop.

## CONCLUSION

Based on our review of the record, the facts are undisputed that MMAStop acted in good faith without knowledge of Anselmo's fraud or Abante's mistake in paying MMAStop. Because MMAStop has legal justification to retain the funds it received from Abante, justice and fairness do not require it to return the money. Therefore, we affirm the decision of the district court.

AFFIRMED.

————————

IN RE INTEREST OF AALIYAH M. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
RONALD M., APPELLANT.
___ N.W.2d ___

Filed July 23, 2013.    No. A-12-979.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Parental Rights.** Parents have a recognized liberty interest in raising their children.
3. **Parent and Child: Due Process.** The parent-child relationship is afforded due process protection.
4. **Constitutional Law: Due Process: Appeal and Error.** The appellate courts apply a three-part test for due process protecting liberty interests: (1) Is there a protected liberty interest at stake? (2) If so, what procedural protections are required? (3) Given the facts of the case, was there a denial of the process that was due?
5. **Words and Phrases.** The word "or," when used properly, is disjunctive.
6. **Constitutional Law: Due Process: Parental Rights.** In a hearing on the termination of parental rights without a prior adjudication hearing, where such termination is sought under Neb. Rev. Stat. § 43-292(1) through (5) (Cum. Supp. 2012), such proceedings must be accompanied by due process safeguards.

Appeal from the Separate Juvenile Court of Lancaster County: ROGER J. HEIDEMAN, Judge. Affirmed.

Joseph E. Dalton, of Dalton Law Office, P.C., L.L.O., for appellant.

Daniel Zieg, Deputy Lancaster County Attorney, for appellee.

INBODY, Chief Judge, and IRWIN and MOORE, Judges.

MOORE, Judge.

## INTRODUCTION

Ronald M. appeals from the order of the separate juvenile court of Lancaster County, which terminated his parental rights to his minor children. On appeal, Ronald assigns error to the court's failure to advise him of his rights pursuant to Neb. Rev. Stat. § 43-279.01 (Reissue 2008) prior to the hearing on the State's motion for termination of his parental rights. Because Ronald received the rights advisement at the time of the initial appearance hearing, his due process rights were not violated, and we affirm.

## BACKGROUND

On October 1, 2009, the juvenile court held an initial appearance hearing on the State's petition alleging that the minor children were juveniles as described in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2008). The children's mother appeared with her counsel, and Ronald appeared with his counsel. Before Ronald and the children's mother entered their pleas, the court advised them of their rights and the possible dispositions of the case as required by § 43-279.01. In advising them, the court stated:

> You are entitled to be represented by an attorney, counsel has been appointed for both of you in this matter, as well. You have a right to remain silent as to any questioning which might tend to prove you guilty of a criminal charge. You do have a right to a speedy adjudication hearing or a trial where the State must prove the allegations of [the adjudication petition] by a preponderance of the

evidence. That means what is alleged is more likely true than not true. You do have a right to confront and cross-examine the State's witnesses. You also have a right to testify yourself or bring into court witnesses to testify for you. You do have a right to appeal the ruling of the Court and have a transcript of the proceedings prepared for that purpose. And you do have the right to a prompt hearing on the matter of temporary custody [i]f your children would be removed from your home.

After Ronald and the children's mother both indicated that they understood their rights, the court advised them further, stating:

I also need to explain to you what could happen if the Court would take jurisdiction in that matter, which would happen if after a trial the State had met its burden of proof and had proven the allegations by a preponderance of the evidence, or if you admit those allegations. In those cases, we would then have a disposition hearing and the Court would enter a disposition order. That order would require you to comply with a rehabilitative plan that would be designed to correct the issues that had been adjudicate[d]. As part of that order your children could be allowed to remain in your home under the supervision of the Department of Health and Human Services. The order could provide that your children's temporary custody be placed with the Department of Health and Human Services for placement in foster care, the care of an association or institution. It could also provide that your children be placed with a relative or other suitable family member or person.

I have to advise you that if the Court does adjudicate in the matter and you fail to correct the issues that had been adjudicated, at some point in time a motion to terminate your parental rights could be filed. The State statutes provide a specific time frame that a child or children remain in an out of home placement may serve as a basis for the filing of a motion to terminate parental rights. And that is if a child or children remain in an out

of home placement fifteen out of the most recent twenty-two months.

And, finally, you could be required to contribute to the cost of any out of home placement of your children.

Ronald and the children's mother then indicated that they understood the possible dispositions should the case be adjudicated.

After the juvenile court advised Ronald and the children's mother of their rights and the possible dispositions, the court entered their denials and continued the case for further adjudication and a formal hearing. Although our record does not contain the adjudication proceedings, the minor children were ultimately adjudicated under § 43-247(3)(a).

On June 12, 2012, the State filed motions for termination of the parental rights of both Ronald and the children's mother. In the motion seeking termination of Ronald's parental rights, the State alleged that termination was proper under Neb. Rev. Stat. § 43-292(1), (2), (6), (7), and (9) (Cum. Supp. 2012) and that termination of his parental rights was in the children's best interests.

On July 12, 2012, at the initial hearing on the State's motions for termination of parental rights, the juvenile court again gave an advisement of rights and explained the possible dispositions pursuant to § 43-279.01. The children's mother appeared at this hearing with her attorney and entered a denial to the allegations of the motion seeking to terminate her parental rights. Ronald did not appear at this hearing, but his counsel was present. The court entered denials to the allegations of the motions on behalf of both Ronald and the mother and set the matter for a formal contested termination hearing. Ronald was present and represented by counsel at the termination hearing on August 31, but the rights advisement was not repeated during the course of the termination hearing.

The juvenile court entered an order on September 25, 2012, terminating Ronald's parental rights. The court found that the State had proved grounds for termination under § 43-292(2), (6), and (7) by clear and convincing evidence but had not proved grounds for termination under subsections (1) and (9) of that statute. The court also found that termination of

Ronald's parental rights was in the children's best interests. Ronald subsequently perfected his appeal to this court.

## ASSIGNMENT OF ERROR

Ronald asserts that the juvenile court erred when it failed to advise him of his rights pursuant to § 43-279.01, resulting in a violation of procedural due process and a lack of fundamental fairness.

## STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Edward B.*, 285 Neb. 556, 827 N.W.2d 805 (2013).

## ANALYSIS

Ronald asserts that the juvenile court erred when it failed to advise him of his rights pursuant to § 43-279.01, resulting in a violation of procedural due process and a lack of fundamental fairness.

Section 43-279.01 provides:

(1) When the petition alleges the juvenile to be within the provisions of subdivision (3)(a) of section 43-247 or when termination of parental rights is sought pursuant to subdivision (6) or (7) of section 43-247 and the parent or custodian appears with or without counsel, the court shall inform the parties of the:

(a) Nature of the proceedings and the possible consequences or dispositions pursuant to sections 43-284, 43-285, and 43-288 to 43-295;

(b) Right to engage counsel of their choice at their own expense or to have counsel appointed if unable to afford to hire a lawyer;

(c) Right to remain silent as to any matter of inquiry if the testimony sought to be elicited might tend to prove the parent or custodian guilty of any crime;

(d) Right to confront and cross-examine witnesses;

(e) Right to testify and to compel other witnesses to attend and testify;

(f) Right to a speedy adjudication hearing; and

(g) Right to appeal and have a transcript or record of the proceedings for such purpose.

[2-4] Parents have a recognized liberty interest in raising their children. *In re Interest of Billie B.*, 8 Neb. App. 791, 601 N.W.2d 799 (1999). The parent-child relationship is afforded due process protection. *Id.* The appellate courts apply a three-part test for due process protecting liberty interests: (1) Is there a protected liberty interest at stake? (2) If so, what procedural protections are required? (3) Given the facts of the case, was there a denial of the process that was due? *Id.*

This court has stated that § 43-279.01

protects parents' liberty interests in raising their children by ensuring that a parent who is brought into court for a juvenile proceeding knows what is going on; knows all the possible outcomes of the case, including drastic measures such as termination of parental rights; and understands the rights that may be exercised during the case.

*In re Interest of Billie B.*, 8 Neb. App. at 796, 601 N.W.2d at 803.

The record shows that Ronald and the children's mother were both present at the October 2009 initial appearance hearing during the adjudication phase of the proceedings; that during the hearing, the juvenile court gave them the statutory rights advisement required by § 43-279.01; and that both Ronald and the children's mother acknowledged those rights. Ronald was not, however, present at the July 2012 initial hearing on the State's motion for termination of his parental rights. The children's mother was present at that hearing and was given the § 43-279.01 rights advisement again at that time. Ronald was present at the later trial on the State's motion for termination, but the rights advisement was not repeated during the actual termination trial.

Ronald argues that the juvenile court's failure to give him the rights advisement during the termination phase of the proceedings violated his due process rights and that thus, the order terminating his parental rights should be vacated. In support of his argument, Ronald cites to *In re Interest of Joelyann H.*,

6 Neb. App. 472, 574 N.W.2d 185 (1998), and *In re Interest of A.D.S. and A.D.S.*, 2 Neb. App. 469, 511 N.W.2d 208 (1994). These cases are inapplicable to the present case. In *In re Interest of Joelyann H.*, the rights advisement was never given at any stage of the juvenile court proceedings, and in *In re Interest of A.D.S. and A.D.S.*, the parent was advised of some, but not all, of the rights set forth in § 43-279.01.

In this case, the complete advisement of rights under § 43-279.01 was given to Ronald at the initial appearance hearing and he was advised of the nature of the juvenile court proceedings and the possible consequences, including the possibility of termination of his parental rights. Ronald's brief ignores the advisement that he was given during the adjudication phase and does not contain any authority to support his argument that the rights advisement should have been given a second time. The issue here is whether, after having advised Ronald of his rights during the adjudication phase of the proceedings, the court was required to repeat the advisement during the termination phase of the proceedings.

[5] The State contends that § 43-279.01 requires that the rights advisement be given only once and does not require that the advisement, if given during the adjudication phase of the proceedings, be repeated during the termination phase. The State argues that the statute is disjunctive and requires that the advisement be given either during the adjudication phase or during the termination phase. The word "or," when used properly, is disjunctive. *Liddell-Toney v. Department of Health & Human Servs.*, 281 Neb. 532, 797 N.W.2d 28 (2011). We agree and conclude that § 43-279.01 requires that the rights advisement be given at either the adjudication phase or the termination phase, but does not require that the advisement be given at both phases.

[6] Our conclusion that the rights advisory does not need to be given at both the adjudication phase and the termination phase of the proceedings is consistent with the recognition that an action to terminate parental rights can be brought without the necessity of a prior adjudication, as long as due process safeguards are met. See, Neb. Rev. Stat. § 43-291 (Reissue 2008); *In re Interest of Joshua M. et al.*, 256 Neb.

596, 591 N.W.2d 557 (1999). In a hearing on the termination of parental rights without a prior adjudication hearing, where such termination is sought under § 43-292(1) through (5), such proceedings must be accompanied by due process safeguards. *In re Interest of Joshua M. et al., supra*. In *In re Interest of Brook P. et al.*, 10 Neb. App. 577, 634 N.W.2d 290 (2001), the parents were not given the statutory rights advisement at the adjudication phase, but did not appeal from the adjudication order. On appeal following the termination of their parental rights, we found that although the adjudication was improper, the juvenile court nevertheless had jurisdiction to terminate the parental rights under § 43-292(2) and (4), regardless of the lack of prior adjudication. And, although the parents were not given their due process rights at the adjudication hearing, because the parents were given an adequate rights advisement prior to the termination hearing, their due process rights were not violated in connection with the termination of their parental rights. *In re Interest of Brook P. et al., supra*.

In this case, Ronald was advised during the adjudication phase of the proceedings of his rights listed in § 43-279.01 and he was advised of the nature of the juvenile court proceedings and the possible consequences, including the possibility that his parental rights could ultimately be terminated. While the statutory rights advisory was not given to Ronald again during the termination phase, the juvenile court was not required to do so. Ronald does not allege that he was prejudiced in any way by the court's failure to advise him again during the termination phase of the proceedings, and the record does not reflect that he was prejudiced in any way by not being advised of his rights a second time. Given the facts of this case, we find no violation of Ronald's due process rights.

## CONCLUSION

Ronald's due process rights were not violated in this case. The termination of his parental rights is affirmed.

AFFIRMED.